UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARIA M.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00962-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on July 14, 2021, denied Plaintiff's application for supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 8), and the Commissioner has filed a similar motion (Doc. 10).  For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four**.**

### I.  BACKGROUND

    Plaintiff filed her application for benefits on June 26, 2019, alleging that she became disabled on that day. After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on January 4, 2021.  Plaintiff and a vocational expert, Estelle Hutchinson, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on January 13, 2021.  He first found that Plaintiff had not engaged in substantial gainful activity since her application date. Next, he concluded that Plaintiff suffered from severe impairments including asthma, bipolar disorder, post-traumatic stress disorder, obesity, degenerative disc disease of the cervical spine, status post fusion surgery from C3 to C5, and degenerative disc disease of the lumbar spine. However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

    Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform a limited range of light work.  She could frequently balance and occasionally climb ramps and stairs, kneel, crouch, and crawl.  She could not climb ladders, ropes, or scaffolds and could not work around loud noise, unprotected heights, or dangerous moving mechanical parts.  Also, she could not tolerate concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.  Lastly, she could not tolerate more

than occasional interaction with supervisors, coworkers, and the general public.

The ALJ further concluded that Plaintiff could not perform her past relevant work as a customer service representative, production worker, wiring inspector, and stock person/cashier. However, relying on the vocational expert's testimony, the ALJ determined that, given her vocational profile and with the limitations described above, Plaintiff could perform certain light jobs such as bench assembler, hand packager, and inspector. He also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, raises two issues: (1) did the ALJ err by failing to reconcile limitations contained in the state agency reviewing opinions with his residual functional capacity finding?; and (2) was the residual functional capacity finding supported by substantial evidence? *See* Plaintiff's Memorandum, Doc. 8-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 50 years old at the time of the administrative hearing, first testified that she lived alone with her dog but that her daughter came to her home several times a week to help her and also took her grocery shopping and did her laundry. Plaintiff said that she had worked in the past as a client associate at Home Depot, as a stock person at Walmart, and doing security work for General Motors. She had done cashiering work as well and worked as a wire inspector.

When asked why she could not work, Plaintiff said that she had trouble moving her legs due to her weight and to surgery which implanted metal plates in her neck. She also described back problems as well as pain in her shoulders and neck and numbness in her hands and fingers. Her neck had improved since surgery, however, but she had to wear a back brace during any activity. She could sit for only twenty to thirty minutes at a time before having to get up and walk or change positions, but she was still in constant pain. She could walk for half an hour or 45 minutes but climbing stairs was difficult as was overhead reaching.

Plaintiff also said that she had been diagnosed with anxiety and with bipolar disorder. Her depressive episodes could last for days and she was unable to function at those times. She experienced difficulty being around people as well as having trouble handling stress on her own. She used an inhaler as needed for asthma.

The vocational expert, Ms. Hutchinson, first classified Plaintiff's past work, testifying that the store laborer job was medium and unskilled and a job as cashier was semi-skilled and light, as was the job of retail associate. Finally, wire inspector is a skilled light position. She was then asked questions about a hypothetical person with Plaintiff's vocational profile who was capable of a limited range of light work with postural and environmental restrictions. The

person also had to avoid more than occasional interaction with others. She said that although the person could not do any of Plaintiff's past jobs, he or she could work as a bench assembler, hand packager, and inspector. Finally, she testified that being off task for more than ten percent of the time or being absent more than two days per month would not be tolerated in these positions.

### B.  Treatment Records

The pertinent medical treatment records show the following. In 2017, Plaintiff was involved in an incident while a bus passenger, suffering head, neck, and lower back pain as a result. Physical therapy and chiropractic therapy did not provide her with any relief. In 2019, after MRIs had shown various degenerative changes in the cervical spine, surgery was recommended and was performed in September of that year. A list of active problems set out in a treatment note from December, 2020, included, among other ailments, ankle joint pain, asthma, back pain, knee pain, migraines, morbid obesity, neck pain, left shoulder pain, and rotator cuff tendinitis.

Plaintiff also received mental health treatment in 2019 based on a prior diagnosis of bipolar disorder and self-reported symptoms of post-traumatic stress disorder. Her symptoms included anxiety and anger, although she also graduated from culinary school during this time. She was treated with medication and therapy.

### C.  Opinion Evidence

A reviewing physician, Dr. Ehlert, determined that Plaintiff could do light work with frequent balancing and occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, stooping, kneeling, crouching, and crawling, and with environmental restrictions including avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation as well as excessively loud environments. (Tr. 105-07). A psychiatric reviewer, Dr. Dekeon, thought that Plaintiff could do work that required only brief, superficial contact with others. (Tr. 104). Both evaluations were affirmed on reconsideration.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial

> evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV.  DISCUSSION

#### A.  Limitation on Social Interaction

In her first claim of error, Plaintiff points out that the ALJ found the two state psychiatric opinions persuasive, and points to the conclusion that Plaintiff was limited to brief superficial contact with others.  However, in his residual functional capacity finding, the ALJ included a limitation of occasional, rather than brief and superficial, interaction with others.  Plaintiff argues that the ALJ failed to explain this discrepancy and that such failure requires a remand.  The Commissioner agrees that the ALJ adopted those opinions but contends that Plaintiff's interpretation of the "brief and superficial" language used by the reviewers is incorrect and that there is no meaningful difference between that language and the social interaction limitation contained in the ALJ's residual functional capacity finding.  The Commissioner further argues that the opinions themselves supported a finding of an "occasional contact" limitation because they made reference to other portions of the reviewers' mental residual functional capacity finding which were less restrictive, and also asserts that any error was harmless because the jobs identified by the vocational expert do not require more than brief and superficial interaction with others.

There does appear to be a divergence of opinion as to whether a limitation to brief and superficial interaction with others is the functional equivalent of a limitation to occasional contact.  Plaintiff correctly notes that at least one court has held that the two are not the same. *See Jackson v. Comm'r of Soc. Sec.*, 2019 WL 7283518 (E.D.N.Y. Dec. 27, 2019).  But there is at least one decision from this Court which reached the opposite conclusion.  *See Ward v. Comm'r of Social Security*, 2020 WL 3035850, *3 (W.D.N.Y. June 5, 2020).

While *Ward* does support the Commissioner's position, the cases upon which it relied are

less helpful.  None of them directly rely on the proposition that the two concepts at issue here are indistinguishable, and, upon due consideration, this Court agrees with those decisions which find significant differences between the two.  As persuasively explained in *Troy L. M. v. Kijakazi*, 2022 WL 4540107, at *14 (D. Minn. Sept. 28, 2022),

> Courts have recognized that the terms " 'occasional' and 'superficial' are not coterminous." *Eden v. Comm'r of Soc. Sec.*, No. 18-CV-0076-LTS-KEM, 2019 WL 7666532, at *2 (N.D. Ia. June 6, 2019) (quotation omitted) (citing cases), *report and recommendation adopted*, 2019 WL 5260476 (N.D. Ia. Oct. 17, 2019)); *see also, e.g., Redd v. Comm'r of Soc. Sec.*, No. 1:20-CV-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) ("With regard to social limitations, courts have distinguished limitations that concern 'the quality or nature of interactions' from limitations that concern 'the quantity of time involved with those interactions.' " (*quoting Kilgore v. Saul*, No. 1:19-CV-168, 2021 WL 932019, at *7 (E.D. Tenn. Mar. 11, 2021)); *Casey v. Comm'r of Soc. Sec.*, 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("The terms 'occasional' and 'superficial' are not interchangeable."), *report and recommendation adopted,* 2019 WL 133177 (S.D. Ohio Jan. 8, 2019); *Hurley v. Berryhill,* No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) ("These limitations are not interchangeable, nor does one imply the other."). In doing so, courts have explained that " '[o]ccasional contact' goes to the quantity of time spent with the individuals ...." *Hurley*, 2018 WL 4214523, at *4 (quotation omitted) (emphasis added); *see* Titles II & XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *5 (Soc. Sec. Admin. Jan. 1, 1983) (defining "occasionally" as "occurring from very little up to one-third of the time"); *see also, e.g., Swank v. Comm'r of Soc. Sec.,* No. 2:20-cv-2396, 2021 WL 1345420, at *5 (S.D. Ohio Apr. 12, 2021) (citing cases). This is distinct from " 'superficial contact' [which] goes to the quality of the interactions." *Hurley*, 2018 WL 4214523, at *4 (quotation omitted) (emphasis added); *see also, e.g., Swank*, 2021 WL 1345420, at *5 (citing cases). Thus, "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Sanders v. Astrue*, No. 11-cv-1356 (JNE/JJG), 2012 WL 1657922, at *12 (D. Minn. Apr. 17, 2012), *report and recommendation adopted as modified*, 2012 WL 1658988 (D. Minn. May 11, 2012).

Having reached this conclusion, the next question is whether the psychologists' opinions can be read to support the ALJ's "occasional interaction" limitation because the reconsideration opinion, which indicates in the narrative portion that "Claimant is capable of work that only requires brief, superficial contact with others," also states "see mrfc...." (Tr. 120).  The Commissioner argues that because the mental residual functional capacity portion of the form indicates moderate limitations, the opinion should reasonably be interpreted to mean that occasional contact with others was acceptable.  However, this is not a reasonable construction of

the opinion, especially since the narrative portion represents an explanation of the more general conclusion about what the moderate limitations actually encompass. Further, given that the ALJ did not acknowledge or attempt to explain any apparent discrepancy or inconsistency in the opinion but simply adopted it, the Court does not find this argument compelling.

Lastly, the Commissioner asserts that any error here was harmless because the jobs identified by the vocational expert can all be performed with only brief and superficial interaction with others. The Commissioner relies on *dicta* in *Whitehorne v. Comm'r of Soc. Sec.*, 2020 WL 5077025 (Aug. 27, 2020), to support this argument, but, again, the Court does not find this argument to be persuasive. Apart from the fact that the language from *Whitehorne* is not the basis for the remand which was ordered, that case did not involve a limitation to brief or superficial interaction with others. One of the cases cited in *Whitehorne* does involve the situation presented here, however, and held that the types of jobs at issue here can be done by someone with such limitations. *See Alie v. Berryhill*, 2017 WL 2572287, *16 (E.D. Mo. 2017). But that decision is not without its critics, too. *See Laura A.G. v. Kijakazi,* 2023 WL 5312057*, *8 (D. Minn. June 20, 2023). Ultimately, the Court agrees with the conclusion reached in this latter case, which was that in this type of situation the Court should order a "remand so the ALJ can clarify these issues, articulate [his] treatment of the state agency psychologists' opinions consistent with 20 C.F.R. § 416.920c and, if necessary, take additional VE testimony" which will permit the Court to review a record that does not contain the ambiguities present in this one. *See id*.

### B.  Residual Functional Capacity Finding

Plaintiff's other argument concerns the physical residual functional capacity finding. She notes that the ALJ did not include any limitations resulting from her neck condition despite the fact that the medical records consistently showed that she had limited range of motion in her neck. The Commissioner argues, in turn, that the ALJ was entitled to rely upon the medical evidence, which showed improvement after surgery, the opinions of the two state agency physicians, who concluded that the records did not support functional limitations arising from Plaintiff's neck impairment, and the evidence that Plaintiff was able to perform a wide range of activities of daily living. The Court finds no merit in Plaintiff's argument on this point, but will, as noted above, direct a remand based on her first claim of error.

### V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 8), **DENIES** the Commissioner's motion (Doc. 10), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P.  Kemp**
**United States Magistrate Judge**